[Cite as *State v. Moore*, 2017-Ohio-7024.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | CASE NO. 2015-T-0072 |
| MAURICE MOORE, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Trumbull County Court of Common Pleas.
Case No. 2013 CR 00775.

Judgment: Affirmed in part and reversed in part; remanded.

*Dennis Watkins*, Trumbull County Prosecutor, *LuWayne Annos*, Assistant Prosecutor, and *Michael A. Burnett*, Assistant Prosecutor, Administration Building, Fourth Floor, 160 High Street, N.W., Warren, OH 44481-1092 (For Plaintiff-Appellee).

*Thomas Rein*, 820 Superior Avenue, Suite 800, Cleveland, OH 44113 (For Defendant-Appellant).

TIMOTHY P. CANNON, J.

{¶1} Appellant, Maurice Moore, appeals from his conviction and sentence entered in the Trumbull County Court of Common Pleas pursuant to a jury verdict finding him guilty of Burglary, a felony of the second degree, in violation of R.C. 2911.12(A)(2) and (D). The trial court sentenced appellant to a prison term of eight years to be served consecutive to any other sentences imposed upon appellant by any other court.

{¶2} On June 21, 2012, the home of appellant's ex-girlfriend, Pam Valentino, was broken into. Ms. Valentino was not home during the break-in. To gain access into the home, a front window was broken and the door was kicked in, which shattered the door frame.

{¶3} When Ms. Valentino arrived home, she noticed her television was missing and the window next to the door was broken. As she looked around her house, she noticed other things missing, along with droplets of blood all through her home. Ms. Valentino called the police.

{¶4} Ms. Valentino was visibly upset when police arrived. The police created a report of the incident. Various items were stolen from Ms. Valentino's home, including a Magnavox television, a Blu-ray player, DVDs, a stereo, a camera, a laptop, a leather jacket, and a police scanner. The assailant left a trail of blood throughout the house. Police took two samples of blood from the home, one from the floor and the other from the doorknob. The blood samples were secured, sealed, initialed, and logged as evidence. The blood samples were sent to the Bureau of Criminal Investigation ("BCI"), where the samples were run through the Combined DNA Index System ("CODIS") for comparison.

{¶5} Police received notification from BCI that CODIS revealed a preliminary match between the DNA in the blood samples sent from Ms. Valentino's home and appellant's DNA. In addition, the preliminary match was corroborated through thumbprint comparisons.

{¶6} Based on the letter from BCI, police obtained a search warrant for appellant's DNA. In executing the warrant, police collected buccal swabs from the

inside of each of appellant's cheeks. Those swabs were sent to BCI, which confirmed the preliminary results.

{¶7} Appellant was indicted by the grand jury in the Trumbull County Court of Common Pleas on one count of Burglary, a felony of the second degree, in violation of R.C. 2911.12(A)(2) and (D). Appellant entered a plea of not guilty.

{¶8} On January 23, 2014, appellant executed a Crim.R. 44(C) waiver of his right to counsel. The court appointed stand-by counsel. Subsequently, appellant filed several pro se motions and attended pretrial hearings on February 6, March 6, and March 13, 2014. Appellant was incarcerated in Summit County on other charges from April 2014 until March 2015. Appellant filed additional pro se motions and attended pretrial hearings on February 26, March 19, and May 7, 2015.

{¶9} The case proceeded to jury trial on June 1, 2015. On June 2, 2015, the jury found appellant guilty of Burglary, a felony of the second degree. Appellant was sentenced on June 10, 2015, to eight years in prison "to be served consecutively to any other sentences imposed upon the Defendant by any other court." After considering appellant's ability to pay, the court ordered appellant to pay $1,000.00 in restitution requested by the victim. The court additionally stated the cost of prosecution was assessed to appellant, and the trial judge waived appellant's fines due to appellant's indigence. Appellant did not request a waiver of his court costs at the sentencing hearing.

{¶10} Appellant filed a timely notice of appeal, pro se. After filing his initial appellate brief, appellant requested that counsel be appointed to represent him in this appeal. Counsel was appointed on May 27, 2016. Appellant filed a supplemental brief through counsel on July 11, 2016.

3

{¶11} Appellant presented five assignments of error in his initial brief and three assignments of error in his supplemental brief.

{¶12} After oral argument, held November 8, 2016, this court sua sponte ordered supplemental briefing from both parties to address the limited issue of whether it was error for the trial court to impose appellant's sentence consecutive "to any other sentences imposed upon Defendant by any other court."

{¶13} Appellant states, as his first assignment of error in his initial brief:

> The Trial Court Erred By Failing to inform the Appellant of the Nature of the Charge against him, the statutory offenses involved, the possible defenses to the charge, or any other facts essential to a broad understanding of the matter, before accepting the [Appellant's] Crim. R. 44(C) waiver of Counsel and Allowing him To Proceed to Trial.

{¶14} During pretrial hearings, appellant waived his right to counsel and elected to represent himself. Appellant maintains the record reflects he lacked an understanding of the charge against him and that he "lacked knowledge of the proceedings" when he waived his right to counsel. Appellant argues his waiver of counsel was not knowingly, intelligently, and voluntarily made because the trial court did not make sufficient inquiry into appellant's understanding of the nature of the charge, the range of allowable punishments, and the possible defenses.

{¶15} "Pursuant to the Sixth and Fourteenth Amendments to the United States Constitution and Section 10, Article 1 of the Ohio Constitution, a criminal defendant has the right to assistance of counsel for his defense." *Cleveland v. English*, 8th Dist. Cuyahoga No. 89506, 2008-Ohio-321, ¶10. A defendant may waive his right to counsel when the waiver is voluntary, knowing, and intelligent. *Id.* (citation omitted); *see also State v. Johnson*, 112 Ohio St.3d 210, 2006-Ohio-6404, ¶89 (citations omitted).

4

Furthermore, pursuant to Crim.R. 44(A), prior to waiver a criminal defendant charged with a serious crime must be "fully advised of his right to assigned counsel."

{¶16} There is no precise formula or script the trial court must implement with defendants who indicate a desire to waive their right to counsel. *Johnson, supra*, at ¶101. "'The information a defendant must possess in order to make an intelligent election * * * will depend on a range of case-specific factors, including the defendant's education or sophistication, the complex or easily grasped nature of the charge, and the stage of the proceeding.'" *Id.*, quoting *Iowa v. Tovar*, 541 U.S. 77, 88 (2006). "'To be valid such waiver must be made with an apprehension of the nature of the charges, * * * the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter.'" *State v. Turner*, 11th Dist. Lake No. 2015-L-116, 2016-Ohio-4733, ¶28, quoting *State v. Gibson*, 45 Ohio St.2d 366, 377 (1976) (quotation omitted).

{¶17} At the January 23, 2014 pretrial hearing, the trial court questioned appellant about his education, prior criminal history, and understanding of the rules of criminal procedure and evidence. Appellant indicated he had previously represented himself in criminal matters, although never at a trial by jury. With regard to his educational background appellant stated, "I went to college in small business. I took microcomputers. I took plumbing class. I took, like I said, paralegal classes." Appellant also explained his understanding of the rules of criminal procedure, stating, "I'm very familiar with the rules of criminal procedure and the evidence rules, Your Honor."

{¶18} The trial court extensively inquired into appellant's understanding of his right to have counsel appointed to him, as well as his understanding of the implications

5

of waiving counsel and representing himself in a jury trial.  At the trial court's request, the prosecutor informed appellant that the charge against him was "one count of Burglary, F2."  The following colloquy occurred with regard to the nature of the charge and the range of punishments:

> **The Court:** All right. Have you reviewed the elements of what that crime is?
>
> **Appellant:** Yes, I have, Your Honor.
>
> **The Court:** Do you understand that under state law there are certain sentencing guidelines that will be used in determining your sentence if you're found guilty?
>
> **Appellant:** Yes, sir.  I think it carries two to eight, Your Honor.
>
> **The Court:** That's correct. Which means it's up to the Court to discern, if you get found guilty it could be between two years and it could be up to eight years.
>
> **Appellant:** Yes, sir.
>
> **The Court:** Do you understand if you're found guilty of the crime charged in the indictment that the Court can order, I said up to two to eight years, and also monetary penalty of - - what's the fine, potential fine?
>
> **The Prosecutor**: The potential fine on this, Your Honor, is up to a $15,000 fine.

{¶19} Additionally, the court inquired about possible defenses, and appellant explained, "[f]irst I got alibi, that's one thing.  And then the second thing is, like you said, it wasn't me.  Then another thing is, I lived at the house."  The court then explained to appellant the procedures for using an alibi defense and for obtaining and using an expert witness at trial; appellant indicated his understanding of these procedures.

{¶20} Based on the foregoing, the trial court made a sufficient inquiry into appellant's broad understanding of the charges against him and of the procedures

6

involved in representing himself, in addition to the possible range of punishments, to determine that appellant knowingly, intelligently, and voluntarily waived his right to counsel. Therefore, the trial court complied with Crim.R. 44.

{¶21} Appellant's first assignment of error is without merit.

{¶22} Appellant's second assignment of error alleges:

> The Trial Court Failed to Protect The Appellant's right to Compulsory Process under the Sixth Amendment of The United States Constitution and Section 10 Article 1 of The Ohio Constitution, by Refusing to Enforce his Subpoena to Obtain witnesses with evidence and testimony critical to his defense.

{¶23} Appellant asserts the trial court denied him the right to compulsory process when it failed to compel the attendance of defense witnesses who he subpoenaed but were absent from trial. The trial court was not required to act sua sponte and grant appellant a continuance to find his witnesses or compel them to appear at trial. *See State v. Nelson*, 11th Dist. Lake No. 97-L-108, 1999 WL 778374, *6, citing *Lancaster v. Green*, 175 Ohio St. 203, 205 (1963). The record reflects that when appellant inquired about the subpoena process, the trial court instructed him to direct technical questions to his standby counsel. It appears appellant failed to consult with his standby counsel and also failed to request any appropriate form of relief from the trial court with regard to his subpoenas.

{¶24} Appellant's second assignment of error is without merit.

{¶25} In his third assignment of error, appellant states:

> The Trial Court Erred By Failing To Protect the Appellant's right to prepare a proper defense under the Fifth Amendment of The United States Constitution and Section 16 Article I of the Ohio Constitution, by failing to approve his request for an expert to testify and rebut the State's DNA evidence and Expert witness.

7

**{¶26}** Appellant argues the trial court failed to help him secure an expert witness who was "essential to his defense to rebut the State's DNA evidence." Appellant also takes issue with the trial court's refusal to approve the expert witness he attempted to obtain.

**{¶27}** We review a trial court's denial of an indigent defendant's request for funds to hire an expert witness for an abuse of discretion. *State v. Mason*, 82 Ohio St.3d 144, 150 (1998). "An abuse of discretion connotes that a court's judgment lacks reason or runs contrary to the record." *State v. Benchea*, 11th Dist. Trumbull No. 2015-T-0054, 2016-Ohio-1369, ¶29, citing *Ivancic v. Enos*, 11th Dist. Lake No. 2011-L-050, 2012-Ohio-3639, ¶70.

**{¶28}** "'As a matter of due process, indigent defendants are entitled to receive the 'raw materials' and the 'basic tools of an adequate defense.'" *Id.* at ¶27, quoting *Mason*, *supra*, at 149 (quotations omitted). However, the state is not required to provide an indigent criminal defendant with the funds to obtain an expert witness "upon mere demand of the defendant" and "in the absence of a particularized showing of need." *Id.* at ¶28, quoting *Mason*, *supra*, at 150. The state is required to provide those funds "only where the trial court finds, in the exercise of a sound discretion, that the defendant has made a particularized showing (1) of a reasonable probability that the requested expert would aid in his defense, and (2) that denial of the requested expert assistance would result in an unfair trial." *Id.*

**{¶29}** The trial court reviewed appellant's April 22, 2015 motion to allow expert witness and payment for expert witness at the May 7, 2015 pretrial hearing. In appellant's motion, he stated as his reason for requesting an expert, "[t]his is favorable evidence to defendant."

8

{¶30} The record reflects that appellant failed to make a particularized showing to the trial court that an expert would aid in his defense and that denial of the requested expert would result in an unfair trial. Additionally, the trial court found appellant's requested expert charged an unreasonable fee of $2,000 per day and had been denied expert status in other courts. The trial court explained to appellant that it was not necessary for him to use an expert witness where he did not contest that the DNA found at the house was his; appellant's defense was premised on the assertion that he had lived with the victim, so his blood was present at the scene prior to the commission of the offense. Further, we note the trial court instructed appellant on the procedures for obtaining an expert witness on multiple occasions and encouraged appellant to confer with his standby counsel on the matter. We, therefore, find the trial court did not abuse its discretion in denying appellant's request for an expert witness.

{¶31} Appellant's third assignment of error is without merit.

{¶32} We consider appellant's fourth and fifth assignments of error together:

> [4.] The Trial Court Erred When It Failed to Properly rule on the Appellant's Pre Trial Motions prior to trial, without a proper hearing for some.

> [5.] The State Violated The Appellant's right To Due Process by Suppressing Favorable Evidence for the Appellant that was material to his guilt, after he made numerous requests for discovery.

{¶33} Appellant argues the trial court failed, prior to trial, to rule on his motion in limine, motion for discovery, and motion to allow an expert witness. Appellant additionally argues it was an abuse of discretion for the trial court to deny his oral requests for a suppression hearing and to deny his motion to suppress filed February 7, 2014, without holding a hearing.

9

**{¶34}** As stated above, appellant's motion for an expert witness was denied at the May 7, 2015 pretrial hearing. Additionally, the trial court reviewed appellant's motion for discovery on multiple occasions, with the prosecutor explaining at the February 6, 2014 pretrial hearing that "I have given him discovery. Your, Honor, the state is always seeking additional evidence with regards to criminal acts, so in the event that additional evidence becomes available, I'll provide it to him as it comes in." At subsequent hearings, the trial court continually addressed appellant's discovery requests and ensured that he received discovery from the prosecutor. The trial court, therefore, addressed appellant's motion to allow an expert witness and motion for discovery prior to trial.

**{¶35}** Further, appellant maintains he filed a motion in limine on February 5, 2014; however, the motion to which appellant directs us is an untitled motion requesting the trial court to allow appellant "to wear regular clothing in lieu of county jail clothes at suppression hearing and at trial." The trial court granted that motion. Prior to trial, the trial court reviewed a "request to allow evidence motion" filed by appellant on February 11, 2014. In this motion, appellant listed evidence he planned to present at trial and requested that the trial court make a ruling allowing the evidence to be admitted during trial. The trial court stated, "I guess I could call this a motion in limine" and explained to appellant that "everything set forth in this may or may not be relevant to an appropriate issue at trial, so I can reserve ruling on those." Appellant's argument with regard to this motion is without merit.

**{¶36}** We next address appellant's contentions that the trial court abused its discretion when it denied his oral requests for a suppression hearing and when it denied appellant's motion to suppress filed February 7, 2014, without first holding a hearing. If

10

a motion to suppress meets the minimum standards of Crim.R. 47, the trial court must hold a suppression hearing. *State v. Codeluppi*, 139 Ohio St.3d 165, 2014-Ohio-1574, ¶9, citing *State v. Shindler*, 70 Ohio St.3d 54, (1994) first paragraph of the syllabus. Whether a motion to suppress satisfies Crim.R. 47's minimum standards is a legal question that we review de novo. *Id.* at ¶8-9.

**{¶37}** Pursuant to Crim.R. 47, a motion to suppress must "state with particularity the grounds upon which it is made and shall set forth the relief or order sought. It shall be supported by a memorandum containing citations of authority, and may also be supported by an affidavit." "[A] motion to suppress must state its legal and factual bases with sufficient particularity to put the prosecutor and the trial court on notice of the issues to be decided." *State v. Nicholson*, 11th Dist. Portage No. 2012-P-0063, 2013-Ohio-639, ¶33 (citation omitted).

**{¶38}** At the January 23, 2014 pretrial, appellant requested a suppression hearing, and the court instructed that he had to file a suppression motion. Appellant handed the prosecutor an unfiled motion to suppress, to which the prosecutor responded, "basically what [appellant] has is a statement that says he wants some things suppressed, then in his memorandum of support he just states that he has a right to file a motion to suppress. He doesn't give any basis for that." The court denied the request, suggested appellant review the motion with standby counsel, and instructed the motion had to set forth a specific basis for suppression of the evidence listed therein.

**{¶39}** At the February 6, 2014 pretrial, appellant again requested a suppression hearing. When asked what he was trying to suppress, appellant responded: "I'm trying to suppress basically everything that I - - so far that I received. * * * I'm trying to

11

suppress police statements, blood samples and other stuff that was acquired by law enforcement that pertains to this case, Your Honor." The trial court denied appellant's request, stating, "[a] motion to suppress is a very limited issue that you have some specific thing, some specific constitutional right you believe was violated."

{¶40} Appellant filed a motion to suppress on February 7, 2014, requesting the trial court suppress "witness and victim statement, recording, police statement, and photographs." Appellant also requested the suppression of DNA evidence and an evidentiary hearing to be held on that issue. Appellant's motion contained no specific legal grounds or factual basis to support suppression of the evidence listed in the motion; his memorandum in support only refers to Crim.R. 12(C)(3), which states that a motion to suppress evidence must be raised prior to trial. The trial court addressed the motion to suppress preceding trial on June 1, 2015, and explained that appellant had failed to set forth specific grounds for suppressing the state's evidence. Appellant explained that he "[s]pecifically wanted to address the DNA evidence, the way it was handled during the chain of command." The trial court denied appellant's motion to suppress prior to trial. Because appellant failed to state specific legal and factual bases to support his motion to suppress, we find appellant's motion did not meet the requirements of Crim.R. 47, and it was not error for the trial court to deny the motion without holding an evidentiary hearing.

{¶41} Appellant's fourth and fifth assignments of error are without merit.

{¶42} Appellant's first supplemental assignment of error states:

> The trial court erred when it ordered consecutive sentences under R.C. 2929.14 without making all of the required findings on the record and without incorporate [sic] those findings into the court's sentencing entry.

12

In addition, appellant's supplemental assignment of error, filed at the direction of this court after oral argument, contends:

> The trial court erred by ordering Appellant to serve a consecutive sentence 'to any other sentence imposed upon the defendant by any other court.'

We consider these two arguments in a consolidated analysis.

{¶43} Appellant asserts the trial court's imposition of consecutive sentences is contrary to law because the trial court failed to make the required findings under R.C. 2929.14(C)(4) at the sentencing hearing and in the judgment entry of sentence when it ordered appellant to serve his eight-year prison term "consecutive to any other sentence imposed by the state of Ohio." Appellant requests that this court vacate his consecutive sentence and order a new sentencing hearing.

{¶44} We generally review felony sentences under the standard of review set forth in R.C. 2953.08(G)(2), which states, "an appellate court may vacate or modify a felony sentence on appeal only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *See State v. Marcum*, 146 Ohio St.3d 156, 2016-Ohio-1002, ¶1, citing R.C. 2953.08(G)(2).

{¶45} Appellee argues that appellant has forfeited this argument because he failed to object to the imposition of consecutive sentences at his sentencing hearing. Appellant has not entirely forfeited his argument, but because appellant failed to object at the sentencing hearing, our review is limited to consideration of whether the trial court committed plain error. *State v. Aikens*, 11th Dist. Trumbull No. 2014-T-0124, 2016-Ohio-2795, ¶53 (citation omitted). "When the record demonstrates that the trial court failed to make the findings required by R.C. 2929.14(C)(4) before imposing consecutive

sentences on multiple offenses, the appellant's sentence is contrary to law and constitutes plain error." *Id.*

{¶46} Except as provided in R.C. 2929.14(C), prison sentences are to be served concurrently with each other. R.C. 2929.41(A). Pursuant to R.C. 2929.14(C)(4), a court may require an offender to serve multiple prison terms consecutively if it finds

> that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
>
> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
>
> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶47} A trial court must make the statutory findings to support its decision to impose consecutive sentences, but the trial court is not required to engage in a "word-for-word" recitation of the statutory findings. *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, ¶29. The trial court is not required to set forth its reasons to support its findings as long as the reasons are discernible from the record. *Id.*

{¶48} "[A] trial court's failure to incorporate the findings required by R.C. 2929.14(C) in the sentencing entry after making those findings at the sentencing

14

hearing does not render the sentence contrary to law." *Aikens*, *supra*, at ¶61, citing *Bonnell*, *supra*, at ¶30. While clerical mistakes in the sentencing entry can be corrected via a nunc pro tunc entry, a trial court's failure to make the R.C. 2929.14(C)(4) findings at the sentencing hearing renders the sentence contrary to law, "requiring the vacation of the sentence and a remand to the trial court for resentencing." *Id.*, citing *Bonnell*, *supra*, at ¶36-37.

{¶49} At appellant's sentencing hearing, the trial court made the following findings prior to imposing sentence:

> The Court makes the following specific findings: One, incorporate by reference, I did have our probation department do a records check on you, and you do have 34 criminal convictions in addition to some DUIs and other non-criminal offenses. There was serious economic harm caused to the victim. There was emotional harm caused to the victim. You've shown little or no remorse to - - for the crime itself. You committed crimes after you got charged with this. And you've been sentenced on another case out of Akron, I believe. And you have a pending federal charge.
>
> * * *
>
> The Court makes the following additional findings: that the defendant is likely to commit future crimes, has a history of criminal convictions, criminal behavior, and, again, has accepted no responsibility.

The trial court's June 12, 2015 judgment entry of sentence states the following:

> The Court also considered that the sentence shall be proportional to the Defendant's conduct and further be consistent with similarly situated Defendants.
>
> The Court makes the following specific factual findings: That the Defendant has 34 prior criminal convictions and has charges pending against him by the United States Government; That the Defendant's conduct is more serious than conduct normally constituting the offense; The victim suffered mental injury due to the conduct of the Defendant; The victim suffered economic harm as a result of the offense; The Defendant has shown no genuine remorse for the offense; The Defendant has accepted no

15

responsibility for his actions; That in the opinion of this Court, the Defendant is extremely likely to commit future crimes and cannot be rehabilitated. For the reasons set forth above the Court finds that it is necessary to protect the public from future crime by the Defendant.

{¶50} The threshold determinations that must be made by the trial court are found in the first paragraph of R.C. 2929.14(C)(4). In the sentencing entry, the trial court explicitly states it "considered that the sentence shall be proportional to the Defendant's conduct." During the sentencing hearing, however, the trial court did not explicitly mention proportionality. It is also not clear the trial court made findings that reflect it considered the imposition of sentence in relation to the danger posed to the public.

{¶51} Appellant maintains the trial court also failed to make any of the necessary findings under R.C. 2929.14(C)(4)(a), (b), or (c). In response, appellee argues the trial court made a finding under subsection (c).

{¶52} In the sentencing entry, the trial court referenced appellant's extensive criminal record and found "it is necessary to protect the public from future crime by the Defendant." At the sentencing hearing, however, the trial court referenced appellant's extensive criminal record but did not make a specific finding or set forth any facts to suggest consecutive sentences were "necessary to protect the public from future crime by the offender." Therefore, the trial court made a finding under R.C. 2929.14(C)(4)(c) in the sentencing entry but did not make the finding during appellant's sentencing hearing.

{¶53} Because the record demonstrates the trial court failed to make the proper findings under R.C. 2929.14(C)(4) at appellant's sentencing hearing prior to imposing consecutive sentences, appellant's sentence is contrary to law.

16

{¶54} Furthermore, at the time this sentence was imposed, appellant apparently had charges pending in federal court upon which he had not yet been sentenced. In addition, he was serving a sentence imposed by Summit County, the length of which is not contained in our record. Appellant maintains it is unclear whether the trial court's order that his sentence be served consecutive "to any other sentence imposed upon defendant by any other court" applies to appellant's pending federal charge. Appellant argues the trial court could not have made a proper proportionality finding under R.C. 2929.14(C) if it imposed appellant's sentence consecutive to a pending federal case for which the nature, outcome, and sentence are unknown. Appellee concedes that a trial judge cannot impose a sentence consecutive to a future sentence but argues it is clear from the sentencing entry that the trial court imposed appellant's sentence consecutive to a sentence previously imposed by another court.

{¶55} It is not clear whether the trial court knew the length of the prison term imposed by Summit County at the time of this sentencing. The record should clearly reflect the nature and extent of the sentence that was being served in order for the trial court to properly assess the factors set forth in R.C. 2929.14(C)(4)(a), (b), and (c). It is unclear whether the trial court's order imposing appellant's sentence consecutive to all other sentences by all other courts was intended to apply to any sentences other than the known Summit County sentence. And with regard to the pending federal charge, an Ohio trial court may not impose a sentence and order it to be served consecutively with a future sentence that has not yet been imposed. *State v. White*, 18 Ohio St.3d 340, 342 (1985); *see also State v. Chike*, 11th Dist. Lake No. 2001-L-120, 2002-Ohio-6912, ¶30. Further, as stated by appellant, without knowing the nature, outcome, and

17

sentence of the federal charge it is not possible for the trial court to make a proper proportionality finding pursuant to R.C. 2929.14(C).

{¶56} Appellant's first supplemental assignment of error and post-hearing supplemental assignment of error have merit. Therefore, we remand this matter to the trial court to resentence appellant. We instruct the trial court to consider imposition of a concurrent or consecutive sentence with regard to known sentences already imposed by other courts, and if the trial court re-imposes consecutive sentences, to make all necessary statutory findings.

{¶57} Appellant's second supplemental assignment of error states:

> Appellant's rights against self-incrimination were violated when the trial court imposed a harsher sentence after it found that Appellant had no remorse.

{¶58} Appellant did not make a statement at his sentencing hearing. Appellant argues the trial court violated his right against self-incrimination when it imposed a harsher sentence because it found that appellant showed little or no remorse. In *State v. Moore*, 11th Dist. 11th Dist. Geauga No. 2011-G-3027, 2012-Ohio-3885, this court considered a similar argument with regard to the trial court's statements concerning remorse and concluded, "[t]he statement indicates the trial court was considering R.C. 2929.12(E)(5) – whether the offender shows genuine remorse for the offense." Similarly, here the trial court was considering the statutory sentencing factor, as it was required to do. Appellant has not established that the trial court imposed a harsher sentence because he chose not to allocute at sentencing.

{¶59} We find no merit in appellant's second supplemental assignment of error.

{¶60} Appellant's third supplemental assignment of error states:

18

The court costs imposed at the sentencing hearing infringes [sic] upon Appellant's rights under the Eighth and Fourteenth Amendments to the United States Constitution, R.C. 2929.18, R.C. 2919(B)(5), R.C. 2947.14, and related sections of the Ohio Constitution.

{¶61} Appellant argues the trial court abused its discretion when, although it waived fines due to indigency, it ordered appellant to pay court costs without making a determination of appellant's ability to pay.

{¶62} Appellee maintains that appellant waived the issue of court costs for appellate review because he failed to seek a waiver of the imposition of court costs at sentencing.

{¶63} Pursuant to R.C. 2947.23(A)(1), in criminal cases, even when a defendant is indigent, the trial court must include as part of the sentence the costs of prosecution and render a judgment against defendant for those costs. *State v. White*, 103 Ohio St.3d 580, 2004-Ohio-5989, ¶8. However, after the trial court imposes those costs, if the criminal defendant requests waiver, it is within the trial court's discretion to waive payment of the court costs if the defendant is indigent. *State v. Fomby*, 11th Dist. Lake No. 2012-L-073, 2013-Ohio-2821, ¶58-59.

{¶64} Here, the trial court assessed appellant's ability to pay fines and restitution. The trial court waived fines because it found appellant indigent. With regard to restitution, the trial court stated that it "reviewed the relevant documentation, information provided by the adult probation [department] as well as the victim, and finds that the defendant will have the future ability to pay restitution as ordered. I believe you testified in your trial you have money and you have homes, so the Court is going to order the $1,000 * * * that the victim has the deductible on insurance for all items that were stolen to be reimbursed and grants her a judgment for the $1,000 which she may

execute on her own." Appellant did not request waiver of his court costs in the trial court. It is not error for the trial court to fail to address the ability to pay court costs when there was no request of the trial court to waive them.

{¶65} Appellant's third supplemental assignment of error is without merit.

{¶66} For the foregoing reasons, appellant's first supplemental assignment of error and post-hearing supplemental assignment of error are well taken. The judgment of the Trumbull County Court of Common Pleas is affirmed in part and reversed in part. This matter is remanded for the trial court to consider the imposition of concurrent or consecutive sentences based on the sentence or sentences appellant was serving at the time sentence was imposed in this case.


THOMAS R. WRIGHT, J., concurs,

COLLEEN MARY O'TOOLE, J., concurs with a Concurring Opinion.

_____

COLLEEN MARY O'TOOLE, J., concurs with a Concurring Opinion.

{¶67} I concur with the well written majority opinion but write separately to note that I would also remand this matter for a hearing on defendant's motion to suppress brought forward in assignments of error four and five.

{¶68} Based on the record in this matter, a pro se defendant should have the ability to challenge the admissibility of the evidence based upon the Constitutional right to be free from unreasonable search and seizure as contained in the U.S. and Ohio Constitutions.